**The Law Offices of Jacob Aronauer**
225 Broadway, 3rd Floor
New York, New York 10007
(212) 323-6980
jaronauer@aronauerlaw.com

November 7, 2019

**Via ECF**

Magistrate Judge Robert W. Lehrburger
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007

      Re:    *Armijos et al. v. Senator Construction Group, Inc. et al.*
             18-cv-02779 (ER) (RWL)

Dear Judge Lehrburger:

    This office represents Plaintiffs German Armijos, Luis Caraizaca, Omar del Razo, Alexander Gonzalez, Rafael Lopez, Giovanny Manosalvas, Pedro Pachay, Adalberto Perez, Francisco Pineda, and Patricio Toalongo ("Plaintiffs") in the above captioned matter. Plaintiffs, together with Defendants Senator Construction Group, Inc., Senator Construction, Corporation, Haroon Contracting, Inc., and Atiq Rehman and Muhammad Usman, individually (collectively "Defendants"), request that Your Honor approve the settlement reached in this matter. A copy of the settlement agreement is annexed.

## Overview

    Senator Construction Group, Inc. (also known as Haroon Contracting Inc. and Senator Construction Corporation) is a construction company with locations in Manhattan, Brooklyn and Staten Island. Plaintiffs worked as construction workers for Senator Construction Group, Inc. ("Senator") from December 2015 through March 24, 2018.

    Plaintiffs believe they could recover approximately $115,245.61 in unpaid overtime and earned wages if successful at trial. In contrast to Plaintiffs' belief in their ability to recover damages, Defendants believe that Plaintiffs were correctly paid and that, overall, Defendants were compliant with the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

## Summary of Plaintiffs' Damages

    The following is written through the eyes of Plaintiffs and does not reflect Defendants' position.

    Plaintiff German Armijos worked at Senator from on or about December 15, 2015

to March 24, 2018.  Plaintiff's schedule was Monday through Saturday: five days per week, he worked from 6:00 a.m. to 4:00 p.m., and one day per week he worked from 4:00 a.m. to 3:30 p.m.  Plaintiff Armijos was paid $27/hour for all of his hours worked. Plaintiff Armijos received one 30 minute break per day.  Defendants failed to compensate Plaintiff Armijos for his earned wages for his last three weeks of work.

Plaintiff Luis Caraizaca worked at Senator from on or about May 9, 2016 to March 24, 2018.  Plaintiff's schedule was Monday through Saturday: five days per week, he worked from 7:00 a.m. to 3:30 p.m., and one day per week he worked from 4:00 or 5:00 a.m. to 3:30 p.m.  Plaintiff Caraizaca was paid $32/hour for all of his hours worked. Plaintiff Caraizaca received one 30 minute break per day.  Defendants failed to compensate Plaintiff Caraizaca for his earned wages for his last three weeks of work.

Plaintiff Omar del Razo worked at Senator from on or about April 15, 2017 to March 24, 2018.  Plaintiff's schedule was Monday through Saturday: five days per week, he worked from 7:00 a.m. to 3:30 p.m., and one day per week, he worked from 4:00 or 5:00 a.m. to 3:30 p.m.  Plaintiff Del Razo was paid $32/hour for all of his hours worked. Plaintiff Del Razo received one 30 minute break per day.  Defendants failed to compensate Plaintiff Del Razo for his earned wages for his last three weeks of work.

Plaintiff Alexander Gonzalez worked at Senator from on or about July 1, 2017 to March 24, 2018.  Plaintiff's schedule was Monday through Saturday: five days per week, he worked from 7:00 a.m. to 3:00 p.m., and one day per week he worked from 5:00 or 6:00 a.m. to 3:30 p.m.  Plaintiff Gonzalez was paid $25/hour for all of his hours worked. Plaintiff Gonzalez received one 30 minute break per day.  Defendants failed to compensate Gonzalez for his earned wages for his last three weeks of work.

Plaintiff Rafael Lopez worked at Senator from on or about September 1, 2016 to March 24, 2018.  Between the beginning of Plaintiff's employment and November 2017, Plaintiff's schedule was Monday through Saturday from 7:00 a.m. to 3:30 p.m. each day. From November 2017 through the end of Plaintiff's employment, Plaintiff's schedule was Monday through Saturday: five days per week, he worked from 7:00 a.m. to 5:30 p.m., and one day per week he worked from 7:00 a.m. to 3:30 p.m.  Plaintiff Lopez was paid $18/hour for all of his hours worked.  Plaintiff Lopez received one 30 minute break per day.  Defendants failed to compensate Plaintiff Lopez for his earned wages for his last three weeks of work.

Plaintiff Giovanny Manosalvas worked at Senator from on or about September 1, 2016 to March 24, 2018.  Plaintiff's schedule was Monday through Saturday: Monday through Friday, he worked from 7:00 a.m. to 3:30 p.m., and on Saturday he worked from 9:00 a.m. to 3:30 p.m.  Plaintiff Manosalvas was paid $690 per week for all of his hours worked.  Plaintiff Manosalvas received one 30 minute break per day.  Defendants failed to compensate Plaintiff Manosalvas for his earned wages for his last three weeks of work.

Plaintiff Pedro Pachay worked at Senator from on or about April 2016 to April 2017.  Plaintiff's schedule was Monday through Friday, from 8:00 a.m. to 4:30 p.m. Plaintiff Pachay did not receive any breaks.  Plaintiff Pachay was paid $15/hour for all of his hours worked.

Plaintiff Adalberto Perez worked at Senator from on or about February 2, 2017 to March 24, 2018. Plaintiff's schedule was Monday through Saturday: five days per week, he worked from 7:00 a.m. to 3:30 p.m., and one day per week he worked from 4:00 or 5:00 a.m. to 3:30 p.m. Plaintiff Perez was paid $17.50/hour for all of his hours worked. Plaintiff Perez received one 30 minute break per day. Defendants failed to compensate Plaintiff Perez for his earned wages for his last three weeks of work.

Plaintiff Francisco Pineda worked at Senator from on or about April 17, 2016 to March 24, 2018. Plaintiff's schedule was Monday through Saturday: five day per week, he worked from 7:00 a.m. to 3:30 p.m., and one day per week, he worked from 4:00 or 5:00 a.m. to 3:30 p.m. Plaintiff Pineda was paid $18/hour for all of his hours worked. Plaintiff Pineda received one 30 minute break per day. Defendants failed to compensate Plaintiff Pineda for his earned wages for his last three weeks of work.

Plaintiff Patricio Toalongo worked at Senator from on or about October 27, 2016 to March 24, 2018. Plaintiff's schedule was Monday through Saturday: five days per week, he worked from 6:00 a.m. to 4:00 p.m., and one day per week, he worked from 4:00 a.m. to 3:30 p.m. From the beginning of his employment through April 2017, Plaintiff Toalongo was paid $690/week for all of his hours worked; from May 2017 through September 2017 Plaintiff Toalongo was paid $747/week for all of his hours worked; from October 2017 through the end of Plaintiff's employment, Plaintiff was paid $828/week for all of his hours worked. Plaintiff Toalongo received one 30 minute break per day. Defendants failed to compensate Plaintiff Toalongo for his earned wages for his last three weeks of work.

## History of Lawsuit

On March 29, 2018, Plaintiffs commenced this action against Defendants. Plaintiffs sued for unpaid overtime and earned wages under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), as well as Defendants' failure to provide annual wage notices and wage statements under the NYLL.

On September 20, 2018, the parties attended a mediation session. The parties were not able to reach a settlement at that time. The case was referred to Magistrate Judge Robert Lehrburger on September 28, 2018. On November 13, 2018, the parties appeared before Judge Lehrburger for an initial case management conference. After the initial case management conference, the parties exchanged initial disclosures and served paper discovery requests and provided paper discovery responses. Throughout discovery, the parties were simultaneously engaged in settlement discussions. The parties met for a settlement conference before Judge Lehrburger on July 11, 2019, and reached a settlement in principle at that conference.

The settlement discussions were based on records of Defendants and Plaintiffs, damages calculations provided by Plaintiffs and representations made by Defendants with respect to their ability to withstand a large judgment. Defendants are currently litigating two additional lawsuits with over 50 plaintiffs. On information and belief, Defendants are currently out of business, and are borrowing money from relatives in order to pay the

agreed-upon settlement amount.

The settlement negotiations were done at arms' length.  Plaintiffs' attorney is an experienced litigator, as are Defendants' attorneys.  Both sides recognized the risks that in continuing to 'run up' litigation costs.

### Fairness and Reasonableness of the Settlement

The settlement sum is $92,500 in six monthly payments.  This ensures that Plaintiffs will obtain approximately 80% of their unpaid overtime and unpaid wages as calculated by Plaintiffs.  The settlement agreement provides that the settlement amount will be allocated as follows:  Plaintiffs will receive a total of $69,375, and The Law Offices of Jacob Aronauer will receive $23,125.  Payments to counsel are inclusive of fees and expenses:  although Plaintiffs covered the cost of the filing fee, Plaintiff's counsel paid approximately $150 in service costs.  Under this allocation, Plaintiffs' counsel will accept 8.33% less than the percentage listed in the retainer agreement Plaintiffs signed with this office.

Plaintiffs' total settlement amount will be allocated according to their overtime wages, unpaid wages and notice damages accrued during their respective employment periods; the seven plaintiffs who attended the settlement conference on July 11, 2019 will receive an additional $1,100.75 per person (equally apportioned from 8.33% of the total settlement amount).  Plaintiffs' total settlement amount will be allocated as follows: German Armijos will receive $14,692.51; Luis Caraizaca will receive $10,481.90; Omar del Razo will receive $7,256.26; Alexander Gonzalez will receive $5,526.76; Rafael Lopez will receive $6,595.69; Giovanny Manosalvas will receive $2,989.31; Pedro Pachay will receive $2,471.52; Adalberto Perez will receive $5,767.91; Francisco Pineda will receive $6,421.97; and Patricio Toalongo will receive $7,171.16.

The settlement of $92,500 constitutes a fair compromise.  Although this settlement does not represent the full amount of Plaintiffs' unpaid overtime and earned wages according to Plaintiffs' reported employment periods, there were many discrepancies between records provided by Plaintiffs, records provided by Defendants, and Plaintiffs' recollections about their own employment periods and schedules and those of their colleagues.  Thus, $92,500 represents a "happy medium."  This is particularly true when considering that there were questions as to the ability of the corporate defendants to withstand a large judgment.

The negotiations of this case were typical of a FLSA lawsuit against a small business.  The owners of the enterprise provided documentation that demonstrated that Defendants were not able to withstand a large judgment.

Initially, the parties were very far apart as it pertained to reaching a resolution. Plaintiffs were seeking over six figures while Defendants were offering significantly less. Defendants proposed a resolution of $92,500 over six months.  The fact that Defendants need six months to make this payment demonstrates that Defendants do not have deep pockets.

Under *Cheeks* and its progeny, a court should consider the totality of the circumstances, including but not limited to the below factors, in determining whether a proposed settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion. *Beckert v. Ronirubinov*, No. 15 CIV. 1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015) (*citing Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

In this case, as a preliminary matter, the "agreement is the product of arm's length bargaining between experienced counsel" and involves no "possibility of fraud or collusion." Id. As for the range of recovery, Plaintiffs will receive approximately 80% of their claimed unpaid overtime wages and unpaid earned wages, according to Plaintiffs' calculations. Plaintiffs risked winning at trial but being stuck with an empty judgment. Of course, if the Court had found that Plaintiffs had succeeded on all of their claims, Plaintiffs' recovery (when taking into consideration liquidated damages) could have been higher than the settlement amount. Thus, this settlement is a reasonable compromise.

This settlement enables the parties to "avoid both the anticipated burdens and expenses in establishing their respective claims and defenses." Id. Plaintiffs are eager to be made whole, which they will achieve through this settlement. Furthermore, this settlement will spare Defendants additional legal fees and expenses, prevent the further accrual of Plaintiffs' attorneys' fees, and relieve Defendants of the burden of further defending this federal court action.

### Work Performed by Plaintiff's Counsel

Plaintiffs' counsel will receive 25% of the settlement, inclusive of expenses. We respectfully submit the allocation of 25% for Plaintiffs' counsel should be approved. *See Rangel v. 639 Grant St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) (Judge Bloom awarding plaintiff's counsel one-third of the settlement amount, plus costs); *see also Vidal v. Eager Corp.*, 2018 U.S. Dist. LEXIS 42113, at *4-5 (E.D.N.Y. March 13, 2018); *see also, Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 50 F.3d 229, 239 (2d Cir. 2007); *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp.2d 2d 164, 178 (E.D.N.Y. June 25, 2012) (awarding fees in the amount of one-third of the total settlement); *Reyes v. Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277, at *14 (S.D.N.Y. May 29, 2009) (awarding fees in the amount of 33% of the total settlement). Furthermore, as shown above, it is standard for the Court to approve more than 25% of the settlement amount.

Plaintiffs' counsel performed critical work. Plaintiffs' counsel met with Plaintiffs to learn about their case, drafted paper discovery requests, answered Defendants' paper

discovery demands and diligently researched the corporate Defendants' business, as well as the overall strength of Plaintiffs' claims.  Plaintiff's counsel also drafted multiple damages spreadsheets based on the information provided by Plaintiff, documents provided by Plaintiffs, and discovery documents provided by Defendants.

## Attorneys' Fees and Counsel's Qualifications

Jacob Aronauer is the managing partner of The Law Offices of Jacob Aronauer. Mr. Aronauer has been practicing law since 2005 and started his own firm in 2013.  Since he started his own law firm, Mr. Aronauer's practice has primarily focused on wage and hour law.  In 2018 and 2019, Mr. Aronauer was voted a "Rising Star" in the New York area by Super Lawyers. Mr. Aronauer's hourly rate is now $400 an hour.  Paralegals in this case employed by Mr. Aronauer's firm charged $150 per hour.  Jacob Aronauer has litigated approximately 120 wage and hour cases over the past six years.

## Conclusion

Court approval of an FLSA settlement is appropriate "when [the settlement] [is] reached as a result of contested litigation to resolve bona fide disputes." *Johnson v. Brennan,* No. 10-cv-471, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011).  "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." Id.  (citing *Lynn's Food Stores, Inc. v. United States*, 679, F.2d 1350, 1353 n. 8 (11th Cir. 1982)).

Given the conflicting evidence, the quality of the evidence and counsel and the allocation of the burden of proof on Plaintiffs, the settlement represents a reasonable compromise with respect to contested issues.   We jointly request the settlement agreement's approval.  *See Reyes v. Altamarea Group, LLC*, 10-cv-6451 (RLE), 2011 WL 4599822 at *6 (S.D.N.Y. Aug. 16, 2011) (Ellis, M.J.).

Respectfully submitted,

*/s/ Jacob Aronauer*
Jacob Aronauer
225 Broadway, 3rd Floor
New York, NY 10007
(212) 323-6980

*Attorney for Plaintiffs*

cc:  **Via ECF**
     *All attorneys on record*